UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES,<br><br>Respondent,<br><br>vs.<br><br>OSBALDO OSWALDO SARABIA,<br><br>Movant. | No.  2:06-cr-0464 JAM AC (TEMP)<br><br><br><br>FINDINGS AND RECOMMENDATIONS |
|---|---|

Movant Osbaldo Oswaldo Sarabia is a federal prisoner proceeding pro se with a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[1]  Movant challenges his conviction and sentence on two counts of possession with intent to distribute at least 50 grams of methamphetamine and one count of possession with intent to distribute at least 5 kilograms of cocaine.  He seeks post-conviction relief on the grounds that his trial counsel rendered ineffective assistance.  Upon careful consideration of the record and the applicable law, the court recommends that movant's § 2255 motion be denied.

**I.     Background**

On October 13, 2006, the San Joaquin County Superior Court issued a warrant to search the residence at 5121 Terlaner Way, Salida, California.  (ECF No. 104-2 at 3-6.)  Stockton Police

---

[1]  This motion was assigned, for statistical purposes, the following civil case number: No. 2:12-cv-3111 JAM AC.

1

1  Officer Michael Dixon provided an affidavit in support of that search warrant, which included the
2  following statements.  On October 12, 2006, law enforcement agents in the Stockton area
3  participated in a joint operation which resulted in the arrest of an individual who possessed
4  "multiple pounds" of crystal methamphetamine.  (Id. at 7-8.)  This individual (hereinafter
5  "confidential informant" or "CI") immediately agreed to cooperate with law enforcement in
6  exchange for possible consideration in connection with his expected methamphetamine
7  trafficking charges.  (Id. at 8.)  The CI informed federal agents that a man named "Osbaldo" had
8  provided him with multiple pounds (but no more than 6 pounds) of crystal methamphetamine on
9  several occasions over the last seven or eight years.  On one occasion the CI went inside
10 Osbaldo's house, bought 5 pounds of crystal methamphetamine, and saw an additional 20 pounds
11 of crystal methamphetamine in the house.  (Id.)  The CI later positively identified movant's
12 driver's license photograph as "Osbaldo."  He also provided a physical description of "Osbaldo."
13 (Id.)

14      The CI told law enforcement that the 6 pounds of methamphetamine in his possession
15 when he was arrested was provided by Osbaldo approximately two weeks previously.  (Id.)  The
16 CI paid Osbaldo $8,000 for one pound and owed him $38,000 for the rest.  (Id.)  He had met with
17 Osbaldo within the last week and had paid him an additional $8,000, leaving a balance on his debt
18 of $30,000, which he still owed.  (Id.)

19      The CI directed law enforcement to 5121 Terlaner Way in Salida, California, which he
20 described as the residence where he had met Osbaldo to pick up crystal methamphetamine and
21 where he saw the 20 pounds of crystal methamphetamine.  (Id. at 8-9.)  He stated that Osbaldo
22 drove a "newer silver BMW sedan and a burgundy Mercedes Benz S500."  (Id. at 9.)  The CI also
23 told law enforcement that sometimes Osbaldo would have a "Hispanic female adult" deliver
24 crystal methamphetamine to him, and that she normally drove a silver Honda SUV.  This SUV
25 was parked across the street from 5121 Terlaner Way when the CI pointed out the residence to
26 law enforcement.  (Id.)  A DMV records check on that vehicle reflected that it was registered to
27 Oswaldo Osbaldo Sarabia or Tina Perez.  (Id.)
28 /////

1  Later that day, the CI telephoned movant. The call was monitored but not recorded.

2  Officer Dixon provided the following synopsis of that conversation:

> The CI contacted Sarabia and indicated that the CI had his (Sarabia's) money. Sarabia asked the CI if the CI wanted him (Sarabia) to bring "something" (crystal methamphetamine). Sarabia then asked, "Do you have it (money, referring to the $30,000 debt owed by the CI) all?" The CI indicated yes and requested Sarabia to bring the regular (5 pounds of crystal methamphetamine). Sarabia indicated that he would call when he was leaving.

(Id.) Shortly thereafter, at 10:20 p.m., the CI called movant again. (Id. at 9-10.) This conversation was also monitored but not recorded. Officer Dixon provided the following synopsis of that conversation:

> The CI asked what was going on, and Sarabia indicated that he was leaving. Sarabia indicated that he would call before he got there.

(Id. at 10.) At approximately 10:42 p.m., surveillance agents saw a silver sedan pull into the driveway of 5121 Terlaner Way and a person later identified as movant exit the driver's seat of the car and walk towards the front door of the residence. (Id.) The silver sedan was registered to Osbaldo Sarabia or Ofecia Sarabia at 1951 Glen Harbor Drive, Ceres, California. (Id.)

At approximately 10:57 p.m., surveillance agents saw movant exit the residence with nothing in his hands. (Id.) He entered the driver's seat, drove the vehicle a short distance, made a U-turn, and returned to the residence. He then exited the vehicle, walked to the residence, entered with a key, and re-exited one minute later holding a red bag. (Id.) Movant then drove away, followed by surveillance units. (Id.) One of the police agents noticed that there were still several lights on in the interior of the residence. (Id.)

At approximately 11:11 p.m., the CI received a telephone call from movant. According to Officer Dixon, movant indicated he was in Lathrop and wanted to meet with the CI there. (Id. at 11.) The CI agreed to meet with movant. (Id.) Surveillance units observed the silver BMW in the Lathrop area. (Id.)

At approximately 11:25 p.m., the CI received another telephone call from movant. According to Agent Dixon, movant stated that he wanted to meet with the CI at the Denny's

3

restaurant on Waterloo Road. (Id.) Surveillance units saw the silver BMW drive through the parking lot of the Denny's restaurant on Waterloo Road. Shortly thereafter, police conducted a "traffic stop" of the BMW and detained movant. (Id.) Officer Dixon searched the BMW and found a red bag in the rear seat containing approximately 4 pounds of crystal methamphetamine. (Id. at 11-12.) Agent Dixon noted that movant's cellphone was continuously ringing after his arrest. (Id. at 12.)

In his affidavit, Officer Dixon advised that he entered the residence at 5121 Terlaner Way, before the issuance of a search warrant for that residence, for the following reasons:

> Based on your affiant's experience, the presence of lights on inside the residence, the missing silver Honda not observed leaving the neighborhood, the continuous phone calls on Sarabia's phone, and Sarabia's inability to answer the telephone or return to the residence due to his arrest, your affiant decided to clear the residence at 5121 Tarlaner Way, Salida, CA of occupants to prevent the destruction of evidence while this search warrant is being prepared.
>
> Agents have cleared the residence of occupants, and are standing by outside the residence.

(Id. at 12-13.)

On November 15, 2006, an indictment was filed charging movant with two counts of possession with intent to distribute at least 50 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (counts one and two), and one count of possession with intent to distribute at least 5 kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1) (count three). (ECF No. 7.) On July 1, 2009, movant's counsel filed a motion to suppress evidence. (ECF No. 55.) That motion requested an order suppressing all evidence obtained pursuant to movant's arrest and the warrantless stop and search of his vehicle, and the subsequent search of movant's residence at 5121 Terlaner Way pursuant to the search warrant. (Id.) Movant's counsel summarized his arguments as follows:

> The defendant was stopped at gunpoint and taken out of his vehicle. Thereafter, his vehicle was searched without consent, a search warrant or probable cause to believe that there was contraband in his vehicle. Based on the illegal search of defendant's vehicle the

4

>Government obtained a search warrant for his residence that resulted in the further seizure of illegally obtained evidence.

(Id. at 7.) The motion to suppress also contained a request for an evidentiary hearing:

>with regard to the alleged facts that led the officers to stop and search the defendant's vehicle. The affidavit of TFO Mercado contains multiple instances of (1) hearsay and (2) conclusionary statements as to the meaning of the overheard and apparently unrecorded conversations. The defense will object to any attempt to introduce the affidavit. This Court needs to hear testimony as to the conversations to determine if the stop and search were justified. It is this evidence that led to the search warrant for the residence at 5121 Terlaner Way, Salida, California. Without such evidence there was no probable cause for the issuance of a search warrant for the residence.

(Id. at 8.)

The district court held a hearing on the motion to suppress on August 25, 2009. (ECF No. 104-2 at 20-40.) At that hearing, movant's counsel argued at length that an evidentiary hearing was necessary in order to hear testimony to determine if "the stop and search were justified" and to interpret the meaning of the telephone conversations between the CI and Sarabia, described in the search warrant affidavit. (Id. at 20, 21, 23, 25, 32.) Counsel argued that "aside from the location of a residence and a car and a conversation which is ambiguous, we don't have any factual verification of any of the drug-related information the informant is providing. That's what's lacking here for probable cause." (Id. at 33.) Counsel also informed the judge that:

>The facts that you would receive, your Honor, would be facts related – there is more to the story than what I have in my reports with regard to what occurred with this informant, what he was promised, what he was told, what he needed to do to achieve whatever he achieved. These are things that should be before the Court so the Court can properly evaluate the quality of whatever detailed information, which we don't have here from Agent Mercado or Agent Dixon's affidavit, as to what the informant told them. That's what's lacking in the reports. They just say here is a conversation that was not recorded, in summary, period.

(Id. at 25-26.)

The district court denied the motion to suppress, finding that there was sufficient probable cause to search movant's vehicle. The district judge specifically noted that the information provided by the CI was corroborated by events as they unfolded and that the CI had an incentive

5

1  to be truthful with law enforcement authorities in order to obtain leniency on his pending criminal
2  charges. The judge explained:

> I think the problem with your motion – we can get to the merits of the motion, which you've already started to argue, but the problem with your motion is it ignores all the other evidence in this case. The observations by the surveillance officers. The fact that your client actually went into the residence. That the CI said that that's his house. The fact that he came out with a red bag. You know, you want me to focus in the CI, but it seems to me that, as the government argues, everything that the CI told Agent Mercado turned out to be true. In fact, your guy went into the house where ultimately that house was searched and a ton of items were found.
>
> * * *
>
> . . . the proof's in the pudding. If what he said, as you argue, wasn't true, was, you know, done because he was under pressure, that he had cut a deal, isn't the proof in the pudding? He points out that this may be your client's car, or this is your client's car. Your client gets into this car. This is Mr. Sarabia's house. Your client goes into the house. I mean everything that the CI told the agents was corroborated by their own observations.

(Id. at 24-25, 26.)

The district court also denied movant's motion for an evidentiary hearing, finding that "a hearing would add nothing to what is already before the Court." (Id. at 28.) The judge also stated that "the brief in support of the motion does not allege facts with sufficient definitiveness, clarity, or specificity to enable this Court to conclude that contested issues of fact exist." (Id.) The district judge found that "there was, without question" probable cause to search movant's vehicle and the residence at 5121 Terlaner Way. (Id. at 38.)

After his motion to dismiss was denied, movant's counsel informed the trial judge that the government was willing to offer a plea agreement which included the right to appeal the adverse ruling on the suppression motion. (Id.) Counsel explained, "I've just discussed it briefly with Mr. Sarabia, and that would be acceptable to him. Obviously, we'd have to review the agreement." (Id.)

Under the terms of the plea agreement that movant signed, he entered conditional guilty pleas to each count of the indictment but reserved the right to appeal the district court's denial of his suppression motion. (ECF No. 74 at 3.) The plea agreement limited movant's prison

6

exposure to between 168 and 210 months and guaranteed a three-level reduction in his offense level based on his acceptance of responsibility, so long as certain conditions were met.  (Id. at 4.)  The agreement also provided that the government could argue for an upward departure from the applicable guideline range based upon aggravating factors, such as the quantity of narcotics involved in the offense.  (Id. at 7.)  The parties waived the right to move for any other departures from the Sentencing Guidelines.  (Id. at 7-8.)

On June 15, 2010, the district court sentenced movant to 210 months in prison and a 60 month term of supervised release, and imposed a $300 special assessment.  (ECF No. 89.)  The government filed two sentencing memoranda.  (ECF Nos. 82, 88.)  In the presentence report, the probation officer recommended a below-guideline, mandatory minimum sentence of 120 months in prison.  (ECF No. 99 at 7.)  Movant's counsel did not file a sentencing memorandum.

At the sentencing hearing, movant's counsel stated that he had no objections to the presentence report.  (Id. at 5.)  He did, however, file a written request that the court not take into consideration an incident at the Butte County jail with which movant was involved.  (Id. at 4.)  The court granted that request.  (Id. at 6.)  After questioning by the court, movant's counsel argued that the probation officer's recommendation of a 120 month sentence was appropriate under the circumstances of this case.  (Id. at 10-11.)  However, counsel did not argue for a downward departure from the sentencing guidelines because he was prohibited from doing so by the plea agreement.  (Id. at 9.)  The district judge declined to follow the probation officer's recommendation of a sentence of 120 months in prison "given the massive amounts of narcotics involved in this case and the significance of the trafficking that this defendant was involved in."  (Id. at 16.)

Movant filed a timely appeal, challenging the denial of his motion to suppress.  The Court of Appeals for the Ninth Circuit affirmed the district court's ruling.  Specifically, the appellate court found that law enforcement officers were entitled to rely on the information provided by the CI because he "implicated himself when he described a history of drug dealing transactions with Sarabia" and because "the police independently corroborated information the confidential informant provided."  (ECF No. 102 at 2-3.)  The Ninth Circuit concluded that "based on such

indicia of reliability and a phone conversation between Sarabia and the confidential informant monitored by an agent, which the affidavit of the agent logically interpreted as being related to a drug transaction, it was reasonable for the agents to infer that contraband would be found in Sarabia's vehicle." (Id. at 3.) The Ninth Circuit also upheld the district court's denial of an evidentiary hearing to explore the interpretation of the phone calls between the CI and movant. The court concluded that movant "showed no contested issues of fact and only provided conclusory reasons in support of having an evidentiary hearing, thus demonstrating only a desire to cross-examine the agents." (Id.)

## II.    Applicable Law

Below, the undersigned will review the legal standards applicable to motions brought pursuant to 28 U.S.C. § 2255 as well as the standards which govern the ineffective assistance of counsel claims which movant presents in the instant petition.

### A. Motions Pursuant to 28 U.S.C. § 2255

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255, filed in the court which imposed sentence. Tripati v. Henman, 843 F.2d 1160, 1162 (9th Cir. 1988). Under § 2255, the federal sentencing court may grant relief if it concludes that a prisoner in custody was sentenced in violation of the Constitution or laws of the United States. United States v. Barron, 172 F.3d 1153, 1157 (9th Cir. 1999). To warrant relief, a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). Relief is warranted only where a petitioner has shown "a fundamental defect which inherently results in a complete miscarriage of justice." Davis v. United States, 417 U.S. 333, 346 (1974).

Under § 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, '[u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" United States v. Blaylock, 20 F.3d 1458, 1465 (9th Cir. 1994) (alteration in original) (quoting 28 U.S.C. § 2255). The court may deny a hearing

if the movant's allegations, viewed against the record, fail to state a claim for relief or "are so palpably incredible or patently frivolous as to warrant summary dismissal." United States v. McMullen, 98 F.3d 1155, 1159 (9th Cir. 1996) (internal quotation marks omitted). To warrant a hearing, therefore, the movant must make specific factual allegations which, if true, would entitle him to relief. Id. Mere conclusory assertions in a § 2255 motion are insufficient, without more, to require a hearing. United States v. Hearst, 638 F.2d 1190, 1194 (9th Cir.1980).

### B. Ineffective Assistance of Counsel

The clearly established federal law for ineffective assistance of counsel claims is Strickland v. Washington, 466 U.S. 668 (1984). To succeed on a Strickland claim, a defendant must show that (1) his counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense." Id. at 687. Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." Id. at 687–88 (internal quotation marks omitted). "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 687).

Reviewing courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. There is in addition a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689). This presumption of reasonableness means that the court must "give the attorneys the benefit of the doubt," and must also "affirmatively entertain the range of possible reasons [defense] counsel may have had for proceeding as they did." Cullen v. Pinholster, 563 U.S. 170, 196 (2011) (internal quotation marks and alterations omitted). A reviewing court is required to make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 669. See also Richter, 562 U.S. at 107 (same).

Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. Counsel must, "at a minimum, conduct a reasonable investigation enabling him to make informed decisions about how best to represent his client." Hendricks v. Calderon, 70 F.3d 1032, 1035 (9th Cir. 1995) (quoting Sanders, 21 F.3d at 1456 (internal citation and quotations omitted).

Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. "The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 112.

### III. Movant's Claims

Movant claims that his trial counsel rendered ineffective assistance by virtue of the following errors: (1) waiting until more than 2 1/2 years after he was retained to file a suppression motion; (2) filing a "deficient" motion to suppress and failing to provide sufficient justification to obtain an evidentiary hearing on that motion; (3) advising movant to enter into a plea agreement that permitted the government to argue for an upward departure while barring movant from requesting a below-guideline sentence; and (4) failing to file a sentencing memorandum or to argue effectively for a sentence of 168 months, the low end of the guideline range. (ECF No. 104-1 at 11.)

With respect to the motion to suppress, movant contends his counsel should have alleged disputed facts with sufficient clarity to obtain an evidentiary hearing and should have explained with more specificity at the hearing why a hearing was necessary. (Id.) Specifically, movant argues that his trial counsel should have informed the trial court that the CI: (1) was released by state authorities after he agreed to cooperate with authorities; (2) remained out of custody for six months before his arrest on federal charges; (3) had a "very" significant criminal history; and (4) received lenient treatment in connection with his pending criminal charges. (Id. at 12-13.) Movant argues that these facts would have raised questions about the credibility of the CI's information and would have convinced the district court to hold an evidentiary hearing on the

motion to suppress. (Id.) In support of this contention, movant points out that the Ninth Circuit's opinion stated that the motion to suppress "showed no contested issues of fact and only provided conclusory reasons in support of having an evidentiary hearing, thus demonstrating only a desire to cross-examine the agents," and that the district court ruled that movant's brief in support of his request for an evidentiary hearing on the motion to suppress "does not allege facts with sufficient definitiveness, clarity, or specificity to enable this Court to conclude that contested issues of fact exist."

Movant also argues his trial counsel should have filed a motion in the trial court based on the holding in Franks v. Delaware, 438 U.S. 154 (1978), in which the United States Supreme Court held that a defendant may overcome the presumption of validity that surrounds an affidavit in support of a search warrant and obtain an evidentiary hearing if he makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit. (Id.) Movant argues the trial court would have granted a Franks motion "had one been filed and competently litigated." (ECF No. 104-1 at 14.)

Finally, movant claims his trial counsel should have challenged the officers' entry into the Terlaner Way residence before the search warrant was issued. (Id. at 15.) He argues there were no exigent circumstances to justify that entry and that counsel's failure to challenge the seizure of drugs and other items from the residence on this basis constituted ineffective assistance. (Id.)

With regard to the sentencing proceedings, movant argues his trial counsel rendered ineffective assistance in failing to file a sentencing memorandum, making only perfunctory arguments at the sentencing proceedings, and failing to argue for a specific sentence at the low end of the guideline range. (Id. at 16.)

Movant's claims with respect to the plea negotiations will be discussed below.

**A. Waiver of Claims**

Respondent argues that all of movant's claims of ineffective assistance of counsel were waived by the terms of his plea agreement. (ECF No. 114 at 12-17.)

/////

In the plea agreement, movant waived the right to file an appeal of his conviction and "any aspect of the sentence imposed in this case." (ECF No. 74 at 8.) He also waived the right to file a § 2255 motion. Movant "specifically agree[d] not to file a motion under 28 U.S.C. § 2255 or §2241 attacking his conviction or sentence." (Id.) In open court at the change of plea hearing, movant agreed that he had agreed "to waive appeal and collateral attack," with the exception of an appeal challenging a ruling on his suppression motion. (Id. at 6-7.) Movant also stated he understood that by entering his guilty plea he was giving up the right to "collaterally attack or appeal all or any part of the plea and/or sentence." (Id. at 11.)

There is no constitutional right to appeal. Jones v. Barnes, 463 U.S. 745, 751 (1983). Thus, a knowing and voluntary waiver of appeal rights in a negotiated plea agreement is enforceable in federal court. United States v. Navarro-Botello, 912 F.2d 318, 319 (9th Cir. 1990). See also United States v. Watson, 582 F.3d 974, 986 (9th Cir. 2009) ("A defendant's waiver of his appellate rights is enforceable if the language of the waiver encompasses his right to appeal on the grounds raised, and if the waiver was knowingly and voluntarily made"); United States v. Abarca, 985 F.2d 1012, 1014 (9th Cir. 1993) (upholding waiver of right to collateral review). A reviewing court "looks to the circumstances surrounding the signing and entry of the plea agreement to determine whether the defendant agreed to its terms knowingly and voluntarily." United States v. Baramdyka, 95 F.3d 840, 843 (9th Cir. 1996).

During the plea colloquy movant stated that he was not under the influence of drugs or alcohol. (ECF No. 98 at 4.) He answered in the affirmative when asked by the trial judge whether he was "fully satisfied with the representation and advice given to you in this case by your attorney." (Id. at 5.) Movant stated that he was entering the plea voluntarily and because he was guilty. (Id.) The trial court "reviewed the charges and each of the terms of the plea agreement and asked [movant] questions to ensure that he understood the contents of his plea agreement." Baramdyka, 95 F.3d at 844. The court also reviewed and summarized the guideline stipulations in the plea agreement and the parameters of movant's possible sentence. (ECF No. 98 at 6, 9.) Movant agreed that these were the terms of his plea agreement and his maximum possible penalties as he understood them. (Id. at 7.)

Movant affirmed that he had "enough time to discuss with your attorney how those guidelines and statutory sentencing factors might apply to your case." (Id. at 9.) He agreed that the factual basis for his plea, as described by the prosecutor, was correct, and that he had reviewed the factual basis with his counsel. (Id. at 14.) The trial court concluded that movant was fully competent and capable of entering a plea and that he had made a "voluntary, knowing, and intelligent waiver of his constitutional rights." (Id. at 15.) Movant's contemporaneous on-the-record statements carry substantial weight in the assessment of the voluntariness of his guilty plea, and "carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). This court finds that the plea agreement and the circumstances surrounding its adoption establish that movant knowingly and voluntarily waived his right to appeal. See Baramdyka, 95 F.3d at 844.[2]

/////

/////

---

[2] After the instant § 2255 motion was submitted for decision, movant filed a document entitled "Notice of Change in DOJ Policy on Waiver of Claims of Ineffective Assistance of Counsel." (ECF No. 120.) Attached thereto is a memorandum issued on October 14, 2014 by the Office of the Deputy Attorney General to all federal prosecutors, advising them of an updated policy "relating to waivers of claims of ineffective assistance of counsel." (ECF No. 120-1.) The notice provides:

> Federal prosecutors should no longer seek in plea agreements to have a defendant waive claims of ineffective assistance of counsel whether those claims are made on collateral attack or, when permitted by circuit law, made on direct appeal. For cases in which a defendant's ineffective assistance claim would be barred by a previously executed waiver, prosecutors should decline to enforce the waiver when defense counsel rendered ineffective assistance resulting in prejudice or when the defendant's ineffective assistance claims raises a serious debatable issue that a court should resolve.

(Id.) Movant argues that, based on this memorandum, "the government should now decline to enforce the plea agreement's waiver provision with respect to Sarabia's ineffective assistance of counsel claim." (ECF No. 120 at 2.) In this case, the plea agreement signed by movant does not contain an explicit waiver of claims of ineffective assistance of counsel. Thus, the first part of this memorandum does not apply here. Further, to the extent movant's plea agreement operates as a waiver of some of his claims of ineffective assistance of counsel, for the reasons explained below he has failed to show that his counsel rendered ineffective assistance resulting in prejudice or that those claims raise a serious debatable issue in this regard. Accordingly, the memorandum from the Deputy Attorney General appears to have no bearing on the issues before this court.

### B. Ineffective Assistance of Counsel

Waivers of the right to appeal cannot bar ineffective assistance of counsel claims associated with the negotiation of plea agreements. Washington v. Lampert, 422 F.3d 864, 871 (9th Cir. 2005). Thus, "a plea agreement that waives the right to file a federal habeas petition pursuant to 28 U.S.C. § 2254 is unenforceable with respect to an IAC claim that challenges the voluntariness of the waiver." Id. See also United States v. Pruitt, 32 F.3d 431, 433 (9th Cir. 1994) (An appeal waiver may not "categorically foreclose" defendants from bringing § 2255 proceedings alleging ineffective assistance of counsel "based on counsel's erroneously unprofessional inducement of the defendant to plead guilty or accept a particular plea bargain"). However, to the extent that a habeas petitioner seeks to claim he received ineffective assistance of counsel premised on his attorney's allegedly faulty advice, he may do so only based upon that advice as it related to the decision to enter his guilty plea. Any ineffective assistance claims relating to other, earlier actions by his counsel are barred by the holding in Tollett v. Henderson, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea"). Moran v. Godinez, 57 F.3d 690, 700 (9th Cir. 1994), superseded on other grounds by statute, AEDPA, Pub.L. No. 104–132, 110 Stat. 1214, as stated in McMurtrey v. Ryan, 539 F.3d 1112, 1119 (9th Cir. 2008). See also Givens v. Sisto, No. C 08-05231 JW (PR), 2010 WL 1875766 (N.D. Cal. May 7, 2010) ("the only challenges left open in federal habeas corpus after a guilty plea is the voluntary and intelligent character of the plea and the nature of the advice of counsel to plead.").

Movant's claims that his trial counsel rendered ineffective assistance in failing to file an effective and timely motion to suppress, failing to argue effectively at the hearing on that motion, failing to obtain an evidentiary hearing on the motion to suppress, and failing to file a Franks motion, all involve conduct by counsel that occurred prior to the entry of movant's plea of guilty. Accordingly, these claims have been waived by the terms of his plea agreement. Tollett, 411 U.S. at 267.

Movant's claim that his trial counsel failed to file a sentencing memorandum or to make an effective argument for a lower sentence at the sentencing proceedings was expressly waived in the plea agreement, involves events that occurred after movant entered his guilty plea, and is not concerned with the voluntary and intelligent character of that plea or the nature of counsel's advice to plead. Accordingly, these claims have also been waived by the terms of movant's plea agreement. Washington, 422 F.3d at 871. See also Williams v. United States, 396 F.3d 1340, 1342 (9th Cir. 2005) ("a valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing"); United States v. Nunez, 223 F.3d 956, 959 (9th Cir. 2000) (when a defendant waives the right to appeal his sentence, he also "waives the right to argue ineffective assistance of counsel at sentencing"); United States v. Bolinger, 940 F.2d 478, 480 (9th Cir. 1990) (waiver of the right to challenge sentencing errors valid with the exception of claims that the sentence imposed is not in accordance with the negotiated agreement).[3]

Movant also raises several claims of ineffective assistance of trial counsel that involve counsel's performance during plea negotiations. Those claims have not been waived by the terms of movant's plea agreement and will be addressed below. Tollett 411 U.S. at 267.

The Sixth Amendment right to counsel "extends to the plea-bargaining process." Lafler v. Cooper, __ U.S. __, 132 S. Ct. 1376, 1384 (2012). To prevail on such a claim, a petitioner must show that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. Hill v. Lockhart, 474 U.S. 52, 56 (1985). A petitioner must also demonstrate "'gross error on the part of counsel,'" Turner v. Calderon, 281 F.3d 851, 880 (9th Cir. 2002)

---

[3] In arguing that these claims have not been waived, movant contends that his trial counsel's ineffective performance in prosecuting the motion to suppress and at the sentencing proceedings "directly implicate" the voluntariness of his guilty plea. (ECF No. 119 at 2.) Citing the Seventh Circuit decision in Hurlow v. United States, 726 F.3d 958 (9th Cir. 2013), movant argues that trial counsel's deficient and unsuccessful efforts with respect to the motion to suppress caused him to plead guilty "to a bad plea agreement" and rendered his right to appeal "illusory." (Id. at 4.) This court disagrees. Unlike the situation in Hurlow, movant's counsel filed a motion to suppress in the trial court and prosecuted it in a competent manner. There is no evidence before the court that ineffective assistance of trial counsel in connection with the motion to suppress or the sentencing proceedings rendered movant's guilty plea involuntary.

(quoting McMann v. Richardson, 397 U.S. 759, 772 (1970)), and that the advice he received from his counsel was "so incorrect and so insufficient that it undermined his ability to make an intelligent decision about whether to accept the [plea] offer.'" Id. (quoting United States v. Day, 969 F.2d 39, 43 (3rd Cir. 1992) (noting that "that familiarity with the structure and basic content of the Guidelines . . . has become a necessity for counsel who seek to give effective representation")).

Defense counsel is not "required to accurately predict what the jury or court might find." Turner, 281 F.3d at 881. See also McMann, 397 U.S. at 771 ("uncertainty is inherent in predicting court decisions."); United States v. Martini, 31 F.3d 781, 782 n.1 (9th Cir. 1994) ("Trials are difficult to predict, and advising a criminal defendant whether to accept or reject a plea offer can be a tricky proposition."). Nor is defense counsel required to "discuss in detail the significance of a plea agreement," give an "accurate prediction of the outcome of [the] case," or "strongly recommend" the acceptance or rejection of a plea offer. Turner, 281 F.3d at 881. Although counsel must fully advise the defendant of his options, he is not "constitutionally defective because he lacked a crystal ball." Id.

Movant first points to his trial counsel's statement to the district judge that the government had offered a plea agreement and that counsel had "discussed it briefly with Mr. Sarabia." Without elaboration, movant argues this is not "a competent way to negotiate a favorable plea agreement." (ECF No. 104-1 at 15.) Movant also claims that after the government extended the plea offer to him, his counsel "did not come to Sacramento to discuss the plea agreement with his client; rather, he just mailed the plea agreement to Sarabia who signed it at the change of plea hearing." (Id.) These allegations are vague, conclusory, and unsupported by the record and should be denied on that basis. See Shah v. United States, 878 F.2d 1156, 1161 (9th Cir. 1989) (vague and conclusory allegations in a § 2255 motion do not support relief).

In any event, movant has failed to show that the performance of his trial counsel with respect to his communications about the plea agreement was deficient or prejudicial. Trial counsel's statement that he had "just discussed [the plea agreement] briefly with Mr. Sarabia" was immediately followed by his statement, "obviously, we'd have to review the agreement."

(ECF No. 104-2 at 38.)  There is no evidence in the record that this review did not take place. Further, movant told the trial court that he was "fully satisfied with the representation and advice given to you in this case by your attorney" and that he had had enough time to discuss with his counsel how the sentencing guidelines and statutory sentencing factors applied to his case.  There is no evidence from the plea colloquy or otherwise that movant did not sufficiently discuss the plea agreement with his counsel.

Movant also claims that "no reasonably competent counsel" would have advised him to accept a plea agreement which "permitted the government to argue for an upward departure, but barred him from arguing for a below-guideline sentence." (ECF No. 104-1 at 15-16.)  Movant states that he "should have pled guilty without a plea agreement as he gained nothing of substance in the agreement since Mr. Stanley had not properly preserved issues for appeal, including failing to provide justification for an evidentiary hearing and failing to file a Franks motion to suppress." (Id. at 16.)  Movant argues that pleading guilty without a plea agreement would have permitted his counsel to ask the sentencing court to follow the recommendation of the probation officer for a sentence of 120 months in prison.  (Id.)

Movant has failed to show that his trial counsel's advice to accept the government's plea offer was deficient.  As noted by respondent, after failing to prevail on his motion to suppress movant chose to enter into a plea agreement that limited his possible prison exposure to between 168 and 210 months in prison (although the government was permitted to argue for an above-guidelines sentence), retained his right to appeal the adverse ruling on the motion to suppress, and secured a three-level reduction in his offense level based on his acceptance of responsibility. Counsel's advice to accept the government's offer under the circumstances of this case was not "outside the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

Movant has also failed to show prejudice with respect to this claim.  The record reflects that the sentencing judge declined to follow the recommendation of the probation officer for a 120 month sentence because of the "massive amounts of narcotics involved in this case and the significance of the trafficking that this defendant was involved in." (ECF No. 99 at 16.) Movant's guilty plea admitted that he possessed 116 pounds of methamphetamine, 6.25


kilograms of powder cocaine, and 4.5 pounds of marijuana in his residence.  (ECF No. 74 at 13.) There is no evidence that any argument by movant's counsel would have resulted in a lower sentence, given the district judge's reaction to the amount of narcotics involved in this case. Movant has failed to show that he would have received a sentence of 120 months in prison, or any sentence less than the one he received, had his trial counsel advised him to reject the government's plea offer and enter an open plea.[4]

Finally, movant advises this court that approximately four months after he was sentenced his trial counsel was suspended by the State Bar of California.  (ECF No. 104-1 at 10.)  The California Bar Journal Discipline Summary states, among other things, that counsel "was retained by jailed inmates facing criminal charges, but he abandoned most of those clients, didn't return phone calls, their files or unearned fees and he did not perform legal services competently." (ECF No. 104-2 at 44.)  There is no evidence that trial counsel's suspension had anything to do with his performance in this case, and the record does not reflect that movant's counsel abandoned him or failed to return his property.  The mere fact that movant's trial counsel was suspended by the California Bar after this case was concluded, without any specific connection to his representation of movant in this case, does not establish ineffective assistance of counsel.

**IV.     Conclusion**

Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Movant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 be denied; and

2. The Clerk of Court be directed to close the companion civil case: No. 2:12-cv-3111 JAM AC.

/////

---

[4] Movant does not claim that his trial counsel should have advised him to reject the government's plea offer and proceed to trial.  Even if he had raised such a claim, he has failed to demonstrate prejudice.  Where a defendant claims that ineffective assistance of trial counsel led him to accept a plea offer instead of proceeding to trial, a defendant must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill, 474 U.S. at 59.  Movant makes no showing that he would have insisted on going to trial but for counsel's errors in the plea negotiation process.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: January 19, 2016

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE